* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter. Further, at the time of the alleged occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. An employer-employee relationship existed between plaintiff Rosemary Sweeney and defendant-employer South Sea Rattan Collection from June 19, 2000, to April 16, 2004.
4. At the time of the events giving rise to this claim, the defendant-employer was insured by The Charter Oak Fire Insurance Company, Carrier.
5. The plaintiff's last day of employment with the defendant-employer was April 16, 2004.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff quit her job with the defendant-employer after a confrontation with a co-worker. Before storming out, the plaintiff told the owners, Mr. and Mrs. Kuo, that she was quitting and that she would never return to work for them. Plaintiff's contention that she did not quit, but rather went out on medical leave, is not supported by the evidence of record.
2. Prior to working for the defendant-employer, the plaintiff had a major depressive episode in 1999.
3. The plaintiff had a second depressive episode on April 19, 2004, a few days after she quit working for the defendant-employer. She attempted suicide by taking an overdose of Valium and another medication, but was unsuccessful and admitted to Moses Cone Hospital. The plaintiff alleges that she has been unable to work since that time.
4. The evidence of record shows that plaintiff has numerous stressors that contribute to her alleged incapacity to work. The stressors that contributed most significantly to the plaintiff's April 19, 2004, depressive episode include: the loss of her job with the defendant-employer; her financial worries; her perception that she could not live up to her family's expectations; her anxiety over being the sole breadwinner in the family due to her husband's and son's respective disabilities; her worry over her son's serious brain lesions; and her numerous medical problems. Additionally, plaintiff and her husband had to declare bankruptcy because of a failed business venture and have been audited by the IRS, and the plaintiff's husband had a heart attack and is disabled.
5. Each of the plaintiff's medical problems from 1999 to 2004, many of which are currently unresolved, is a separate physical and mental stressor contributing in varying degrees to her April 2004 episode and to her inability to work. Plaintiff's medical problems include: possible diabetes; problems with sleep apnea; obesity; and pain in her neck, back, left shoulder, mid back, low back, both arms, both elbows, both wrists, right hip, both hands, both ankles, the left leg, the left posterior rib, and both feet. She has also experienced shortness of breath, chronic headaches and sinus drainage, severe left foot swelling, carpal tunnel syndrome, urinary tract infection, gastro esophageal reflex disease, obstructive airways disease, a silent heart attack, and COPD. The plaintiff also has Meniere's disease. She experiences fatigue and high blood pressure that pre-dates her employment with the defendant-employer, and now experiences severe depression.
6. On October 17, 2004, the plaintiff reported "pain all over" on Dr. Aronoff's intake questionnaire. She described the pain as constant and at the level of nine on a ten-point scale. Employee's pain significantly contributes to her alleged inability to work.
7. Other stressors that have contributed to the plaintiff's mental illness and chronic high blood pressure in the last five years are the death of her mother and brother-in-law in 2002; the molestation of her granddaughter; anxiety over her own previous molestation by her father-in-law; a total knee replacement surgery; a car accident wherein her car was totaled; and significant weight gain.
8. The plaintiff's expert, Dr. Sena, testified, and the Full Commission finds as fact, that the loss of a job, being unable to pay bills, having obligations to children or adult children, the failure of businesses, ongoing litigation, being audited by the IRS, being the sole breadwinner in the family, gaining significant weight, the death of loved ones, illnesses of loved ones, having disagreements with co-workers, working for abusive supervisors, not liking your boss, feeling financially compelled to stay at a job you don't like, having numerous medical problems, and having an overwhelming conglomeration of medical illnesses are all stressors that can lead to depression as borne by the general public, as opposed to stressors that are specific to the plaintiff's employment. Dr. Sena testified, and the Commission finds as fact, that shipping clerks would not be at an increased risk for the development of depression as opposed to other trades or occupations in the general public. Dr. Gamble testified and the Commission finds as fact that numerous other stressors not related to the plaintiff's work at South Sea factored into her social history.
9. The plaintiff's allegations of alleged filth and "wildlife" at South Sea are not supported by the evidence of record. The Full Commission notes that the defendant-employer had no OSHA violations during the time of the plaintiff's employment. Based upon the totality of evidence, including the testimony and corroborative testimony of numerous lay witnesses and the video of the defendant-employer's premises at the time the plaintiff quit, the Full Commission finds that the plaintiff has failed to prove that the working conditions as alleged by the plaintiff placed her at an increased risk for developing an occupational disease, or that such conditions significantly contributed to her depression.
10. The plaintiff's allegations of her boss's oppressive management style are not supported by the evidence of record. Plaintiff failed to prove those allegations, and failed to prove that it placed her at an increased risk for developing any occupational disease, or that it significantly contributed to her condition. Sylvia Morgan testified that employees would talk and kid around in the office a lot, and that everyone was congenial.
11. The plaintiff's allegation that she was forced to lie to customers is given little weight. She testified that she was asked to lie to customers about shipping dates on a "daily basis." However, if this factor was a stressor for plaintiff, she did not mention it to any of her physicians.
12. The plaintiff worked hard and may have been overworked, like many people in the general public. From the totality of the evidence, the plaintiff failed to prove that being overworked placed her at an increased risk for developing any occupational disease, or that it significantly contributed to her alleged disability. The plaintiff took work on herself, including the cleaning of the Fairfax Road facility. The Kuos did not ask her to work overtime and, in fact, the plaintiff admitted that Mrs. Kuo encouraged her not to work overtime. Dr. Aronoff testified, and the Full Commission finds, that being overworked is a risk factor borne by the public generally for developing the mental illnesses that the plaintiff has.
13. After considering the testimony of Dr. Sena, Dr. Gamble, and Dr. Aronoff, and the competent evidence of record, the Full Commission finds that plaintiff has failed to show that she was at an increased risk for developing an occupational disease as compared to the general public, or that such conditions significantly contributed to her depression.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
Plaintiff has failed to prove that she developed an occupational disease by virtue of her employment with the defendant-employer as defined by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim must be and is hereby DENIED.
2. Each side shall pay its own costs; however, defendants shall pay an expert witness fee of $600.00 to Dr. Sena and $450.00 to Dr. Gamble, if not paid by prior order.
This 28th day of October 2005.
 S/ ____________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/ ____________________ THOMAS J. BOLCH COMMISSIONER
 S/ ____________________ PAMELA T. YOUNG COMMISSIONER